SAMUEL F. BUTTERWORTH, Appellant, *v.* JAMES GOULD, Respondent.

An action will not lie by one claimant of money due under a contract with the government, when the same is paid by an officer of the government, with notice of the claims of both, to another claimant, against such other claimant as for moneys had and received to the plaintiff's use; and this is so, although the plaintiff proves himself to have been entitled, as between him and the defendant, to have received such moneys from the government.

In such a case, the moneys are not received by the defendant to the plaintiff's use, and their receipt by the defendant does not in any respect affect the plaintiff's right to call upon his debtor, whether a government or an individual, for payment.

(*Patrick* v. *Metcalf,* 37 N. Y., 332), referred to and followed.

(Argued October 7th, 1869, and decided December 22d, 1869.)

APPEAL from a judgment of the General Term of the Supreme Court, in the first district, affirming the decision of Judge INGRAHAM, on a trial without a jury, in favor of the defendant.   The action was for money had and received by the defendant from the government on a mail contract to the plaintiff's use.

The facts found by the court are the following :

1st.  That Peter B. Starke contracted with the government

of the United States, on the 23d day of October, 1837, to transport the mail from Jackson to Columbus, in the State of Mississippi, being mail route 3,801, from January 1, 1838, to June 30, 1842, at the rate of $3,625 for each intervening quarter.

2d. That on the 1st day of July, 1839, Peter B. Starke sold to the plaintiff one-half of his interest in said contract, and one-half of his carriages, horses, &c., for the consideration of $5,000, and said plaintiff and Starke on that day made and mutually executed the agreement.

3d. The contract was surrendered to the government on the 21st day of September, 1839, and was, on the same day, re-issued to the plaintiff and the said Peter B. Starke, in their joint name of Starke & Butterworth.

(Both contracts were numbered " No. 3,801.) "

4th. That on the 19th day of December, 1839, an assignment or transfer, executed by said Peter B. Starke, was indorsed on said last named agreement, in the words and figures following, to wit :

" For and in consideration of the sum of $5,000, to me paid by Samuel F. Butterworth, I do hereby assign, transfer and set over unto the said S. F. Butterworth, all my right, title and interest of, in and to the within described property, and all my interest of, in and to the contract therein mentioned.

" Witness my hand and seal, this 19th day of December, 1839.

P, B. STARKE." [L. s.]

5th. On or about the 19th day of December, 1839, the said Peter B. Starke, for a full and valuable consideration, paid to him by the plaintiff, assigned and transferred to the plaintiff all his (the said Starke's) interest in the said mail contract, dated September 21, 1839.

6th. Upon the execution of said transfer or assignment, dated December 19, 1839, the plaintiff took possession of said last mentioned mail contract, and of the property mentioned and referred to in said transfer, *and thereafter carried the*

*mails and performed the mail service required thereby, to the end of the contract.*

7th. The plaintiff did, in fact, perform the mail service under said contract for the quarters ending March 31 and June 30, 1842. It was the mail money due on these quarters which the defendant received.

8th. That on the 1st day of January, 1840, notice was given to the post-office department, by a letter written by the said plaintiff, and signed " Starke &. Butterworth," not to pay any other drafts than those signed " Starke & Butterworth," in the handwriting of the plaintiff. Said letter or notice was in the words and figures following:

" COLUMBUS, *January* 1, 1840.

" C. K. GARDENER, Esq., *Aud'r P. O. Dep't :*

"SIR.—We give you below our signature. You will please pay, from any moneys now due, or that may hereafter become due, all drafts drawn over this signature. You will please pay no other drafts drawn by either of us, except one drawn by P. B. Starke for $1,900, and now held by Major Andrews, as agent for N. Y. Oliver. The residue of the pay now due us, and that may become due during the year 1840, will be necessary, to enable us to carry the mail on route 3,801, from Columbus to Jackson. With great respect we annex our signature,

" STARKE & BUTTERWORTH."

9th. That previous to the 10th day of March, 1840, the said Peter B. Starke was indebted to the defendant herein, for carriages sold him more than a year before the draft herein mentioned was given, and on the said 10th day of March, 1840, the said Starke drew on the said post-office department a draft, in the words and figures following:

" $2,862.36.          COLUMBUS, MISS., *March* 10, 1840.

" SIR.—On presentation of this, my order (which is irrevocable), please pay to Mr. James Gould, of Albany, New York,

or his order, the sum of $2,862.36, out of any moneys due me, or to become due for transporting the mails of the United States between Columbus and Jackson, on mail route 3,801, and charge, for value received, to,

"Your obedient servant,

"P. B. STARKE.

"To C. K. GARDENER, Esq.,
        "Aud'r P. O. Dep't, Washington, D. C."

The plaintiff did not at any time know nor have notice of the aforesaid indebtedness of said Starke, to the defendant.

10th. That said draft was, soon after its date, presented for payment to C. K. Gardener, the then auditor of the treasury for the post-office department, who refused to pay the same, or to note it for payment; but that subsequently, and on or about the 27th day of October, 1841, the said draft was noted on the books of the post-office department for payment, out of the moneys becoming due under contract 3,801, by the auditor, who had then succeeded Mr. Gardener.

11th. That there was due from the United States, on the 31st day of March, 1842, for the quarter ending on that day, on the said contract of Starke & Butterworth, the sum of $2,540.59.

12th. That the defendant claimed said last mentioned sum from the post-office department, by virtue of the draft drawn by said Peter B. Starke in his favor, a copy of which is above set forth; and the plaintiff, by his agent, Theron Butterworth, claimed said sum, as the assignee of the interest of Peter B. Starke, as above set forth.

13th. That the defendant presented his said claim to the auditor of the post-office department, and insisted upon his right to receive the whole of the said sum of money; that plaintiff's agent, Theron Butterworth, in conjunction with Charles K. Gardener, also presented his claim for said money.

14th. The said auditor, on or about the 22d day of June, 1842, decided that the said defendant was entitled to one moiety of the said sum, and directed that the same, to wit,

$1,270.29½, be paid over to him upon the said draft of Peter B. Starke.

15th. That on or about the 23d day of June, 1842, the said Charles K. Gardener, without the knowledge or assent of the plaintiff, appealed from said decision to the first comptroller of the treasury of the United States, who subsequently affirmed said decision, and directed one moiety of said $2,540.59 to be paid to said defendant.

16th. That the said one moiety, to wit, the sum of $1,270.30, was thereupon, to wit, on the 7th day of September, 1842, paid to and received by the said defendant, by the warrant hereinbefore set forth.

17th. That in addition to the sum of money above mentioned, there was due from the United States, on the 30th day of June, A. D. 1842, for the quarter ending on that day, on the said contract of Starke & Butterworth, No. 3,801, the further sum of $2,739.26.

18th. That the defendant claimed that he should be paid so much of said last mentioned sum as would cover the draft of Starke in favor of said defendant, above set forth; and thereupon, on the 7th day of September, 1842, the said defendant was paid and received out of the treasury of the United States, one-half of the said pay due on said contract, for the quarter ending on the 30th day of June, 1842, to wit, the said sum of $1,369.63, by the warrant hereinbefore set forth.

19th. That both said payments to the defendant were made and the money received by him without the consent of plaintiff, or of any one on his behalf, and in opposition to his wish and will; that defendant, at the times of receiving the same respectively, knew that said plaintiff claimed the said moneys, and that the same were paid to and received by the defendant without the consent of plaintiff, and contrary to his wish and will.

20th. The plaintiff never has, directly nor indirectly, received the money in question nor any part thereof.

Upon these facts the court gave the defendant judgment.

*Augustus F. Smith*, for the appellant, cited *New York Ins. Co.*, v. *Roulet* (24 Wend., 505); 2 Story Eq. Jur., §§ 1225, 1256; *Moses* v. *McFerlan* (2 Burr., 1005, 1012); *Pease* v. *Barber* (3 Caines, 266); *Scott* v. *Truman* (Willes, 400, 405); *Cobb* v. *Dow* (10 N. Y., 341); 3 Black. Com., 163; *Munsell* v. *Lewis* (2 Denio, 224); *Heard* v. *Bradford* (4 Mass., 326); *Appleton* v. *Crowninshield* (8 Mass., 340); *Bradley* v. *Root* (5 Paige, 632, 640, 642); *Berly* v. *Taylor* (5 Hill, 577, 583–4); *Young* v. *Marshall* (8 Bing., 43); Chitty on Cont., 607; *Osborn* v. *Bell* (5 Den., 370, 373); *Lloyd* v. *Brewster* (4 Paige, 537); *Platt* v. *Stout* (14 Abb., 178); *Eagle Bank* v. *Smith* (5 Conn., 71, 75); *Allen* v. *McKean* (1 Sum., 317); 1 Cranch, 441; *Pierce* v. *Crafts*, (12 J. R., 94); *Norton* v. *Cain* (3 Den., 130); *Dygert* v. *Crane* (1 Wend., 534); *Slingerland* v. *Swart* (13 J. R., 255); *Denton* v. *Livingston* (9 J. R., 96); *Townsend* v. *Oliver* (5 Wend., 207); *Shepherd* v. *Hoyt* (7 Hill, 198); *Armstrong* v. *Garrow* (6 Conn., 465); *Dumond* v. *Carpenter* (3 J. R., 183); *Lime Rock Bank* v. *Plimpton* (17 Pick., 159); *Mason* v. *Waite* (17 Mass., 560.)

*John H. Reynolds*, for respondent, cited Browne on Actions at Law, 328, 45 Law Lib., 236; *Stokes* v. *Lewis* (1 J. R., 20, 21); 1 Chitty Pl., 106, 107, 352, 353; *Thurston* v. *Mills* (16 East, 253); *Stevens* v. *Badcock* (3 Barn. & Ad., 354); *Williams* v. *Everett* (14 East, 582.)

LOTT, J. It appears in this case that certain moneys became due under a contract entered into on the 21st day of September, 1839, between P. B. Starke and Samuel F. Butterworth the plaintiff, and the postmaster-general of the United States, for carrying the mails, and that a portion thereof, for which this action was brought, was paid to the defendant by the treasurer of the United States on two different warrants issued and given by the postmaster-general. Such payment was made after adverse claims on the department by the plaintiff and defendant respectively, and the money was all received by the defendant with the full know-

ledge of the plaintiff's claim, without his consent or that of any one on his behalf, and in opposition to his wish and will, and the question presented for our decision is whether it was so received to and for the use of the plaintiff. The facts on which the claim is based are substantially of the same nature as those stated in the case of *Patrick* v. *Metcalf* (37 New York Rep., 332), in which it was said by PARKER, J., in giving the opinion of the court, that " when two claimants for the same service apply for payment to the party bound to pay the same, one of whom is recognized as the person entitled to payment, and is paid to the exclusion of the other, who is in fact alone entitled to payment, the party so excluded derives no right from the circumstances to the money paid to his competitor. It is not money received to his use, for the payment thus made does not in any respect affect his right still to call on his debtor for payment to himself, and it makes no difference whether such debtor is an individual or the government. The obligation of the debtor to him still remains wholly unaffected." That opinion was concurred in by all of the judges, and the principle above asserted fully applies to the present case. It is true that the parties in this case each presented their respective claims to a portion of these moneys to the auditor of the post-office department, and insisted upon his right to it, and the auditor decided that the defendant was entitled thereto, and directed its payment to him. His decision and direction did not conclude the rights of either party. It appears to be assumed by the counsel of both parties that he was acting under the act of congress of July 2d, 1836, section 8, U. S. Statutes at Large, page 80, which provides that it shall be his duty to "receive all accounts arising in said department or relative thereto, to audit and settle the same, and certify their balances to the postmaster-general," and also provides that if either the postmaster or any person whose account shall be settled, be dissatisfied therewith, he may within twelve months appeal to the first comptroller of the treasury, whose decision shall be final and conclusive.

This act only authorizes the audit and settlement of accounts, as between a claimant and the government. It gives no power to adjudicate upon the rights of parties or different individuals asserting adverse claims to such accounts, or their respective interests therein, and his action and decision in reference to such claims cannot affect either party as between each other.

This case is therefore not distinguishable from that of *Patrick* v. *Metcalf*, *supra*, and I concur with the learned counsel for the respondent, that the facts herein show " that the defendant did not receive the money sought to be recovered to the *use of the plaintiff*. He received it under a claim of right as *his own to his own use*, denying the plaintiff's right, and it was paid over by the post-office department to the defendant in defiance of the plaintiff's wishes, and against all his efforts to the contrary. It is impossible, therefore, for any court, without ignoring the very truth of the case, to *imply* any contract or promise by the defendant to receive this money to the *use of the plaintiff*, or to pay it over to him. The parties stand *adverse* to each other in all respects."

I am, therefore, of opinion that the judgment rendered in favor of the defendant at the circuit was right, and that of the General Term affirming it should be also affirmed, with costs.

WOODRUFF, J. If this case were to be determined according to our views of the correctness of the decision made at Washington, upon the effect of the instruments executed by Starke, I should have no hesitation in saying that the plaintiff was the creditor of the United States, and by the assignments received from Starke, and the subsequent performance of the mail contract, entitled to receive the full amount becoming payable therefor.

The decision there made, seems to me unjust; and in my opinion, if an action could be maintained against the United States with like effect as against an individual in similar cir-

cumstances, the payment made to the defendant upon the order of Starke, would constitute no defence.

It is, however, unnessary to state at length the reasons for this opinion, first, because the whole argument of the appellant assumes that the defendant had no legal nor equitable right to collect the money called for by the order of Starke, and that, as a payment on the mail contract, the United States had no right to pay it to him; and second, because the view which I feel compelled to take of the plaintiff's right to maintain this action, makes it unnecessary to discuss that question, for the reason that the present is not a case in which the defendant having a legal authority to receive money from the United States, but as between himself and this plaintiff's being under an obligation by contract or otherwise, to give to him or permit him to take the money, has collected it in fraud of his rights, and so has received money which the law implies to have been received to his use.

The defendant had, in fact, no authority to receive money which belonged to the plaintiff. He never pretended to have such an authority. The United States never consented to pay him money which belonged to the plaintiff, nor intended to do so. Nor has the defendant obtained the money of the plaintiff by fraud, which the plaintiff can waive, and affirming the payment proceed against the defendant as his agent in the collection. And if the payment by the United States was wrongful, it was no satisfaction of the plaintiff's claim by virtue of the mail contract; and if an action could be brought against the government would be no bar to a recovery.

However satisfied by the proofs in this case, that the payment by the United States to this defendant was made upon an erroneous view of the plaintiff's right, and that it was greatly unjust to him, I am constrained to say that the plaintiff has no recourse to the defendant to recover the money from him in this action.

The defendant claimed the money in direct hostility to the plaintiff's claim. The United States consented to pay the money to the defendant, and did pay it in distinct repudia-

tion of the plaintiff's title thereto. And there was never a moment in which the plaintiff could point to the money and say, that to that particular money I have a title; and so he cannot aver, as to the money in the hands of the government or in the hands of the defendant, the latter has received or converted my money to his own use. As money has no ear mark, the government stood as mere debtors in the transaction. The money which was paid did not satisfy the debt, if the defendant was not entitled to receive it. Before payment the money was not the property of the plaintiff. The receipt of it by the defendant, in assertion of his own right to receive payment of his draft, and not under color or pretence of authority to receive it as money due to the plaintiff, did not *per se* invest the plaintiff with title.

The case of *Patrick et al.* v. *Metcalf et al.* (37 N. Y., 332), seems to me to decide the precise question, without rendering it material to inquire to what extent, if at all, the plaintiff is affected by the decision of the auditor or the comptroller of the United States treasury.

Laying those decisions out of view, except so far as they show that the money was deliberately and intentionally paid to the defendant, with intent to recognize his claim and to deny the title of the plaintiff, the case above mentioned is like the present.

There, as here, the plaintiff claimed payment to them of moneys, which the government owed for services rendered in the transportation of goods.

The defendants claimed, that such payment should be made to them as the persons justly entitled. The disbursing officers of the government saw fit to pay the money to the latter.

This court held, that, however true it might be that the government officers should have paid the money to the plaintiff and not to the defendants, no cause of action resulted to the former to recover the money from the latter, as so much recovered to the use of the plaintiff; and that such payment to the defendants, created no trust by implication or otherwise, which the plaintiff could enforce by action to recover the money.

The cases cited by the appellant, and particularly *Bradley* v. *Root* (5 Paige, 632), and *The New York Ins. Co.* v. *Roulet* (24 Wend., 505), do, undoubtedly, give great plausibility to the plaintiff's claim to maintain this action. The first was distinctly before the mind of the court, when *Patrick* v. *Metcalf* was decided, and anything said in the opinion in that case, if it conflicted with the latter decision, must be considered overruled.

But there is a clear distinction between the cases, and one which makes the difference between cases of this general character, in some of which moneys received by a defendant under claim or pretence of right, are deemed received to the use of the plaintiff; and in others, they are not so regarded, and the action will not lie.

In *Patrick* v. *Metcalf*, the payment, by the United States, was a due and proper payment, in full and complete discharge of all liability for the amount paid, and would have been so, had the government been in no other situation than an individual. It was, therefore, an authorized payment, and discharged the debt which was, as between the plaintiff and his assignor, due to the former. In the next place, the assignor (the nominal and legal creditor) had not only assigned his contract to the plaintiff, but had covenanted to deliver and pay over to the plaintiff the moneys, &c., received by virtue thereof; and of the rights of the plaintiff, in this respect, the defendant had notice, when he received the draft of the assignor.

That case, therefore, presented the question, whether the defendant, who, with knowledge of the plaintiff's equitable title and lien upon the moneys due, had used his apparent authority to receive payment, and therein had effectually deprived the plaintiff of all other recourse for the money, to which he was equitably entitled, should be permitted against good conscience to retain it. In principle, the case did not differ widely from that of an agent having a sufficient authority to receive money for his principal, which, as between him and such principal, had been revoked, using his apparent

authority to collect from a debtor, who has received no notice of such revocation.

The case of the *N. Y. Ins. Co.* v. *Roulet* (24 Wend., 505), was decided upon grounds closely analogous, viz.: That the United States, although they paid over the moneys claimed, to the insurance company, did so avowedly upon their apparent title, and with a clear intent to leave the parties afterward to distribute the money, or contend with each other, in respect to the proper title thereto, in the appropriate tribunals. The commissioners of award having no convenient means of settling the rights of claimants *inter sese*. In this view, there was no hostile payment or collection of the money, but the whole inquiry was left open for the establishment of such trust or other title, legal or equitable, as might exist.

In neither *Munsell* v. *Lewis* (2 Denio., 244), nor *Allen* v. *Aguirre* (3 Seld., 543), was the point now under consideration, and to which they are cited, raised or discussed. In the former, the question was between an assignee and his assignor, who, after the assignment, received a gratuitous award of moneys from the State, and the whole question was, whether such award properly belonged to him or enured to the benefit of his assignee. The court were of opinion that his assignment conferred the equitable title to all benefits accruing by reason of the assigned contract, and therefore, although he had legal authority to receive the moneys awarded, he must be deemed to have received them to the use of his assignor, and the latter of the cases last named, the defendants on the sale of goods had agreed that the plaintiff should have the return duties *awarded to them.* Their collection of those return duties was therefore upon clear authority, and the payment to them was a complete discharge of the government, and it was the distinct enforcement of the defendant's undertaking, and nothing more, to hold them responsible to the plaintiff for the money they had agreed the plaintiff should have.

I do not think it profitable to review all the cases cited by the appellant. The books are full of general expressions

broad enough to sustain the equitable action for money had and received, wherever it seems just that the plaintiff should recover it, or that " it lies wherever one man has money that another ought to have ;" and yet this idea of what is agreeable to equity and good conscience, is not to override every other legal principle governing the rights and responsibilities of parties; and such expressions are to be considered with reference to the cases to which they are applied. Thus the decision in *Pierce* v. *Crafts* (14 J. R., 41), was, that the holder of a note payable to bearer may recover against the maker under a declaration for money had and received to his use. A decision of little bearing on the present case The court, however, use this language in discussing the broad scope and equitable nature of the action in that form : " If a man without any authority receive money due to me, I may recover it of him in this form of action," which amounts to this : If a man on pretence of authority receives money due to me, he must pay it over, and the law implies a promise to pay it over to me. I may hold him to the agency which he asserted when he collected money due to me. This general expression is far short of an assertion that he who receives money as his own from one who pays it to him as his own ; both, in terms, denying my right to the money at all, can be said to hold it under any implied trust or promise to pay it to me.

Without pursuing the cases cited further, it must suffice to say that none of them in my judgment, conflict with the case of *Sargeant* v. *Stryker*, decided in the Supreme Court of New Jersey, and to the same effect as *Patrick* v. *Metcalf*, in this court. In that case, the distinction to which I have referred is stated and illustrated, and the subject fully discussed. The sheriff of Hunterdon county, had offered a reward for the apprehension of an escaped prisoner. He was apprehended. The defendants (plaintiffs in error) applied to the sheriff and claimed the reward, and upon their representation that they had taken the prisoner, the sheriff paid to them the amount of the reward he had offered. The plaintiff (defendant in

error) had in fact made the arrest, and on learning that it had been paid to the defendants, brought his action against them in the form of the present, viz., for so much money had and received to his use.

The proof showed negatively that the sheriff did not pay the money to them *for the plaintiff* nor *on his account,* but that they claimed it as their own, and he paid it, supposing them to be entitled to it. Hence, the element of fraud or false representation entered into the means by which the defendants obtained the money; there was no possible question but that they had no scintilla of title or equity in their favor. Still the court held that the plaintiff could maintain no action against them; their receipt of the money and their fraud, or misrepresentation were matters between them and the sheriff, not prejudicing the plaintiff's claim on the sheriff and not enuring in anywise to the plaintiff's benefit. The decision reversing a judgment for the plaintiff rendered in the court below, was pronounced after the expression of a strong desire for the sake of justice to sustain the action in that particular case.

The principle of the decision is in accordance with the case in this court; viz.: Where a defendant has received moneys due to the plaintiff, but claiming it as his own under circumstances in which he has no authority from the plaintiff, and does not act under any pretence of such authority, and the payment to him is made in proposed recognition of his title thereto as his own, and does not operate to discharge the payor from his liability to the plaintiff, then and in such case there is no trust and no implied promise to pay the money to the plaintiff.

This is entire harmony with a class of cases prominently suggested by the counsel for the appellant, viz., where fees are collected by an officer *de facto.* He may be proceeded against by the officer *de jure,* as for so much money had and received to his use. Why? Because he has received them by color of authority, and those who paid had a right to pay them, and are protected in making such payment.

I think the defendant was not entitled to the money, and that it would be conformable to every sense of what is just (in view of the difficulty at least of obtaining the money from the United States), if the defendant were required to pay over the money to the plaintiff. But I am unable to find satisfactory grounds upon which to sustain the action consistently with what I deem settled principles; and I conclude, therefore, that without attaching any importance to the decisions of the auditor or comptroller as adjudications between these parties, the judgment must be affirmed on the ground that the money collected by the defendant was not money which in law or in equity can be deemed received by him to the use of the plaintiff.

The judgment must therefore be affirmed.

All the judges concurring, judgment affirmed.