By the Court.—Curtis, Ch. J.
The referee found, that on or about March 19, 1877, the plaintiff, by Valentine Meyers & Co., their factors, at the city of New York, sold and delivered to the copartnership firm of Southard & Co., doing business in the city of New York, a quantity of pine lumber belonging to the plaintiffs, consisting of one hundred and five thousand seven hundred and forty-three feet, at the price of $16 per thousand feet, amounting to $1,624.43, over and above the freight thereon, which freight was also to be and was paid by Southard & Co., to the party entitled thereto, and which sum of $1,624.43 became due and payable from Southard & Co. to the plaintiffs, for the price of the lumber, on or about March 22, 1877.
That also, on or about March 22,1877, the firm of Southard & Co. paid over to the defendant the price of *436 the lumber so due to the plaintiffs, being the sum of $1,624.43, and the same was received by the defendants to the use of the plaintiffs.
The referee also found that plaintiffs, on or about January 28, 1878, demanded the sum from the defendants, which they neglected and refused to pay, and that the same, with interest from January 28, 1878, was justly due and owing from the defendants to the plaintiffs.
The referee also found, as conclusions of law upon the facts of this case, that the plaintiffs were entitled to recover from the defendants in this action the sum of $1,745.34, together with the plaintiffs’ costs of the action, for which judgment should be entered against both of the defendants, so far only as that it may be enforced against the joint property of both defendants, and the separate property of Edward Bussell.
The proofs sustain the findings of fact of the referee. The conclusions of law that he arrives at are well and carefully considered in his opinion, which is as follows :
The plaintiffs reside at Grand Rapids, Michigan, and manufacture lumber.
Valentine, Myers & Co., at the time of the transactions in question, were engaged in selling lumber on commission, and in the purchase and sale of it on their own account, and had their lumber depot at Hastings, in this State, and an office in the city of New York.
Some time in 1876 there was an agreement made between them and the plaintiffs, by which the latter were to forward to the former, at Hastings, in this State, lumber to be sold by Valentine, Myers & Co., as the factors and agents of the plaintiffs. Valentine, Myers & Co. were to advance all the money required to pay the freight on the lumber thus forwarded to them, and after the latter had sold the lumber they were to make returns on the sale to the plaintiffs. Valentine, *437 Myers & Co. were to deduct from the gross proceeds of the sales five per cent, on the amount thereof for their commissions, the amounts advanced by them for freight, and the amount of charges that would accrue, the nature of which charges was understood between them.
Under this arrangement, Valentine, Myers & Co. from time to time received lumber from the plaintiffs, and out of the lumber thus received they sold and delivered to Southard & Co., of this city, on or about March 19, 1877, a lot of lumber, amounting to $1,691.88, or thereabouts. At the time of this sale Valentine, Myers & Co. were indebted to the plaintiffs on account of sales made by them prior thereto of the plaintiffs’ lumber, over and above the amount of all sums which they had paid for freight on all the lumber forwarded to them by the plaintiffs, and over and above all charges they could possibly make in regard thereto, in an amount exceeding the sum of $6,000, and which yet remains unpaid. On March 20, 1877, Valentine, Myers & Co. assigned to the defendants their claim and demand against Southard & Co. for the price of the lot of lumber they sold to the latter, which assignment is in writing, and concludes thus, viz. :
“The consideration for this assignment being so much of the indebtedness due by us to said Bussell & Co. as shall be equivalent to the amount of the claim assigned.”
On this assignment Southard & Co., soon after its date, paid to Bussell & Co. $1,500 in money, and paid by direction of Valentine, Myers & Co. to the captain of the boat on which this lumber was brought from Hastings to this city, $67.41, the amount due him for freight, and adjusted the balance, being $124.43, by crediting the same to the defendants on account, whereby they have received the same in a way equiva *438 lent to the receipt of the same in cash. At the time Valentine, Myers & Co. assigned this claim to the defendants they knew that Mr. Havens, one of the firm of Valentine, Myers & Co., was about to commence a suit against his copartners to wind up the business of the firm and obtain the appointment of a receiver of its property and effects. Such a suit was soon brought, and a receiver therein was appointed, and Mr. Bussell was one of the sureties of the receiver in that suit, or was a surety for Havens to enable him to obtain an injunction therein. , Southard & Co. had no notice, when they bought this lumber and paid for it, as above stated, that the plaintiffs were in any way interested in such lumber ; nor did the defendants have any such notice when they received the said assignment, nor at the time they received from Southard & Co. the $1,500 in cash, or at the time they took payment of the $124.43 by receiving a credit for it on account.
It is clear that the lumber sold by Valentine, Myers & Co. to Southard & Co. belonged to the plaintiffs at the time of the sale and delivery thereof. That as between the plaintiffs and Valentine, Myers & Co., the latter bad no right, legal or equitable, to any part of the ¡nice to be paid for it. The money paid for it by Southard & Co. to the defendants, when thus paid, in equity belonged to the plaintiffs. Their lumber, by the sale made of it, and the payment made therefor, became converted into this money, which they thus identify and follow into the defendant’s possession. In judgment of law, as I think, they received it to the plaintiffs’ use, unless the facts proved establish a right in them, to take and retain it as against the plaintiffs. The defendants now seek to retain it on the ground, in substance, that on March 16, 1877, they loaned Valentine, Myers & Co. $1,500 in money, on the promise that the proceeds or price of the lumber which Southard & *439 Co. bought should be applied to repay this loan of $1.500. There are three items of evidence bearing directly on this question, viz. :
1. The terms of the assignment of the claim.
2. The testimony of Bussell, and
3. The testimony of Mr. Havens, who got the loan from Bussell.
First. The terms of the written assignment do not import that it was made to secure specially this loan. The loan was $1,500, and the demand, as proved, was $1,624.43, as Southard & Co. paid to the captain of the canal boat $67.45, which left due on the lumber $1,624.43. The assignment states that the claim assigned was “ supposed to amount to about $1,600, more or less.” It directs “ Southard & Co. to pay the said claim to said E. Bussell & Co., or to settle with them for the same,” and declares the consideration thereof to be “ so much of the indebtedness due by us ” (Valentine, Myers & Co.) “ to the said Bussell & Co., as shall be equivalent to the amount of the claim assigned.” This imports the precise consideration and cause of the assignment of the claim to be pre-existing indebtedness of Valentine, Myers & Co. to E. Bussell & Co., of the same amount as that of the claim assigned, and that such pre-existing indebtedness exceeded in amount the amount of the claim assigned. There is nothing in it pointing to or indicating any loan of $1,500, and certainly nothing suggesting the idea of such a loan having been made on a promise that it should be repaid by means of payment of this claim, but, on the contrary, its terms are repugnant to any such idea, or the existence of any such fact.
Second. E. Bussell was examined, before trial, on March 21, 1878. Previously thereto, and about January 28, 1878, he had received written notice from the plaintiffs of the claim which they seek to enforce in this action. On that examination he testified thus, viz. :
*440 “ The last loan I made them (viz., Valentine, Myers & Co.) was on March 16, 1877, $.1,500 ; I fix the date by the fact that I gave a check, and have recently looked up the check” . . . “and this said last loan was only for a day; I took no note or other security ” . . . “This last loan of $1,500 was agreed to be repaid the next day, the 17th ; I did not see them on the 17th, to the best of my recollection, but did see them within a few days after ; think it was at their office, and called their attention to the fact that they did not return said loan ; they then said that they had been disappointed in getting money from some bank; think it was some notes they offered 'for discount; they had some lumber here which was about sold, or that they calculated to place, they said ; they gave me a writing on Southard & Co.” (meaning thereby the assignment before mentioned). . . “I got $1,500 within a'day or two; I do not remember when I got the rest. . . They gave me $1,500 in money, and credit for the balance.”
“ Q. On what account did you take that paper from Havens?” (meaning the assignment).
“A. It was on account of the indebtedness I had against Valentine, Myers & Co., and I gave no receipt for it.”
On the trial of this action Bussell was again examined, and, after hearing his previous deposition read, and after hearing Jonathan 1ST. Havens testify in relation to the loan of the $1,500, testified thus, viz. :
“Q. You remember this check of March 16, 1877, which has been referred to ?”
“A. Yes.”
“ Q. What took place between you and Mr. Havens, if anything, in regard to this lumber which was sold to Southard & Co. at the time of giving this check ? ”
“A. He came to me and wanted to borrow $1,500 for a day or two ; he said that he had money coming in from some bank, and also a boat load of lumber at *441 Watrous & Wilson’s yard, which he had sold, and which he would probably have the money for next day, and would reimburse that money if I would lend him the $1,500 ; I did so, and did not hear anything of him in a day or two ; I went to see them, and they explained that Watrous & Wilson had only taken part of the load, or that they were about selling it somewhere else ; that their money had not come from the bank, and that as soon as it was sold they would give me my money ; in the course of a day or so they sold this lumber to Southard & Co., and gave me an order, as I supposed it was, to go and collect the money.”
On cross-examination he testified thus :
“ Q. This balance here, over and above the $1,500 with which you were credited by Southard & Co., I suppose, has been paid to you ; that is, you had dealings with Southard & Co., hadn’t you?
“A. Yes.
‘ ‘ Q. And that balance was allowed to you as against claims that they held against you ?
“A. Yes, sir.
“ Q. So that it is the same as cash in your hands ?
“A. Yes.”
I think it perfectly clear on this testimony that the loan of $1,500 was not made in reliance on any promise by Havens that the proceeds of this cargo of lumber should be applied to repay it. That Bussell had no such idea when he made the loan, and, according to his deposition before trial, there could be no pretense that anything was said about this cargo of lumber at the time the loan was made. As Bussell details the transaction in that deposition, the cargo of lumber was spoken of when he went and inquired why the loan had not been repaid. There is no pretense in that deposition that any allusion was made to it, or to any explanation of Havens getting money from a bank at the time the loan was made. The testimony of Bussell *442 harmonizes with the terms of the assignment, in respect to what the transaction in regard to this loan was.
The testimony of Havens does not convince me that the terms of the assignment fail to describe that transaction truly in its whole substance, or that Bussell has failed to, describe it accurately. A part of his testimony tends to show that when he borrowed tile $1,500, he assured Bussell that, he would give him a claim on the lumber, and as soon as the money was got for it he should have it. But, he says, he don’t think he said to Bussell, at the time of the loan, that he was expecting to get money from a bank, or that he had offered some notes for discount, and expected to get the money in that way.
Is positive he told Mr. Bussell when he got this check that he would pay when he sold that lumber that was on the boat T. O. Davis.
“ Q. Did Mr. Bussell, at the time, you gave him this assignment, on 20th March, know that your firm had suspended or were about to suspend? . .
“A. . . It was well understood that we gave him this assignment, because wTe would have to suspend ; it was given to him, and, I think, he understood it was for that purpose ; we wanted to secure him.
“ I told him it would be better to secure this $1,500 by making an assignment of the claim for this boat load of lumber ; the boat load of lumber was sold.” This was after the sale to Southard & Co., as that was not made until the 19th.
There are some undisputed facts that support the theory that when Bussell made the loan of $1,500 nothing more was said by Havens then that he would repay it the next day, or in a day or two. At that time Bussell did not suspect that the firm of Valentine, Myers & Co. were in difficulty. That firm and Bussell & Co., prior thereto, from time to time, exchanged notes, and at that time there were outstanding notes of *443 this character, amounting to several thousand dollars (about §6,000), and Bussell did not consider that Valentine, Myers & Co. then owed Bussell & Co. anything, because the latter then supposed the notes oí the former perfectly good. There was not, therefore, any apparent necessity or occasion for Havens to promise, or even suggest, in order to obtain this loan for a day or two, that he would devote any designated property to repay the loan.
On such a state of facts it was natural, and according to the usual course of business under the circumstances, that the transaction should have been such as Bussell in his deposition testifies it was.
Bub before the assignment was made the affairs of the firm of Valentine, Myers & Co. had reached such a crisis that Havens, as a member of that firm, had determined to bring a suit against his partners and obtain the appointment of a receiver, and did do so. That Bussell then knew. That made it certain that Bussell & Co. would be obliged to pay their outstanding notes which they had given for notes of Bussell & Co. to a like amount, and that the notes of the latter would be protested, and that Bussell & Co. would, at most, only receive a dividend on the notes they had given, and would be compelled to pay. The testimony indicates that indebtedness of Valentine, Myers & Co. to Bussell & Co. to thus accrue,' or to thus become absolute, was, in the contemplation of the parties to the assignment^ part of the indebtedness therein mentioned.
These considerations naturally aid. in coming to the conclusion that Bussell, in his deposition, stated the transaction truly, and the whole of it, and that Havens is mistaken in supposing that what w-as first told by him to Bussell, about the lumber finally sold to Southard & Co., was said before the check was delivered, and that it was in fact said a day or two after that, when Bus-sell called to inquire why the loan had not been re *444 paid. It was more important to Bussell and his firm what the fact was in this regard than it -was to Havens, and he, of the two, would naturally remember the transaction according to its substance, if either would. His memory, in regard to that point, would be expected to be more fresh and reliable when first examined than it would be some months later.
I cannot resist the conclusion that the $1,500 was loaned entirely without security, and without any promise to repay it out of the proceeds of a sale of the lumber sold to Southard & Co.
On such facts the defendants received from Southard & Co. money belonging to the plaintiffs, without paying any consideration therefor.
In an action for money had and received, “As a general rule, the question is, to which party, ex cequo et dono, does the money belong?” (Buel v. Boughton, 2 Den. 91).
The action for money had and received is “ denominated an equitable action, and is less restricted by technical rules than most others. It aims at the mere justice of the case, and looks entirely to the question whether the defendants hold money which in equity and good conscience belongs to the plaintiff” (Colville v. Besley, 2 Den. 139, 142).
The defendants have received, and applied to their own use, money which, in equity and good conscience, belonged to the plaintiffs. They came to the possession of it by a misappropriation of it by plaintiffs’ factors and agents. The latter, as between themselves and their principals, had no right to, or interest in, such moneys, except as trustees of the plaintiffs. The defendants did not part with any consideration, or incur any liability, or release any right or property for or on account of this money.
There is no analogy between this case and cases like Butterworth v. Gould (41 N. Y. 450). The latter case, *445 and others like it, hold that where A. is indebted to B. or G., and B. and C. severally claim the debt is due to him, and A. pays the debt to B., that C. cannot recover the money of B. as money had and received to the use of 0., even though it may be made to appear that the debt was in fact owing to C. It cannot be regarded as money paid to the use of 0., for the payment thus made does not in any respect affect his right still to call on his debtor for payment. The relations, as between himself and A., are not affected thereby. In the present case, the money, which was delivered by Southard & Co. to the defendants,.at the time it was so delivered, belonged in equity to the plaintiffs. The payment made by Southard & Co. satisfied their liability for the price agreed to be paid for the lumber. After such payment was made, all claims which the plaintiffs might otherwise have made against Southard & Co. were extinguished. The only title which the defendants can make to the money is through Valentine, Myers & Co., by whose violation of their duty to the plaintiffs the defendants obtained possession of it without paying any consideration therefor.
The defendants further claim that they can defend against this action under that provision of the Factor’s Act which declares that the factor’s agent, intrusted with the possession of any merchandise for the purpose of sale, shall be deemed to be the true owner thereof, so as to give validity to his contract with any other persons for the sale or other disposition of the whole or any part of such merchandise, for any money advanced, or negotiable instrument, or other obligation in writing given by such other person on the faith thereof.
It seems to me, with all due respect for the confidence with which this position was taken, and the ability with which it has been supported, that the short and full answer to it is, that Valentine, Myers & Co., *446 the factors and agents intrusted with the possession of the plaintiffs’ lumber for the purpose of sale, have not made any contract with the defendants for the sale of any part of such lumber, or for the disposition of any such lumber to the defendants for money advanced by them, or securities given on the faith thereof. The lumber in question was sold and delivered to Southard & Co. • The only contract between Valentine, Myers & Co. and the defendants, in relation to this lumber, was made several days after the sale and delivery of the lumber to Southard & Go., and consisted wholly of the transfer by Valentine, Myers & Co, to the defendants, without consideration, of the indebtedness of Southard & Co., for the lumber thus purchased. , The money which Southard & Co. paid and the defendants received, at the time it was so paid and received, was the property into which said lumber had been converted, and in equity belonged to the plaintiffs (Duguid v. Edwards, 50 Barb. 297; Wallace v. Castle, 14 Hun, 106).
The plaintiffs should have judgment for $1,624.42, with interest thereon from the time the demand was made upon the defendants therefor. There were no commissions due to Valentine, Myers & Co. for the sale of this lumber.
I have no doubt, upon the evidence, that at the time of this sale they owed the plaintiffs over $6,000, after crediting themselves with five per cent, commissions on all prior sales.
The above opinion of the referee fully and clearly maintains the conclusions arrived at by the referee, and they are concurred in.
The judgment appealed from should be affirmed, with costs to the respondents.
Freedman, J., concurred.