THE PEOPLE, *ex rel.* The Bank of Monroe, *vs.* THE CANAL COMMISSIONERS.

The state is liable to pay interest upon the amount of a legal appraisement of damages for land taken for public use, after a demand made by the party entitled, of the officers charged by law with the duty of making payment.

Although the state cannot be prosecuted by an individual creditor, yet where the courts have acquired jurisdiction of the case by a lawful proceeding against a public officer, interest will be directed to be paid where it would be in the case of an individual. *Per* WHITTLESEY, J.

But interest is not chargeable against the state until a lawful demand of the principal and a refusal of payment by the proper officer chargeable with that duty.

DEMURRER to a return of the canal commissioners to an alternative mandamus. On the 24th day of May, 1842, the canal appraisers awarded to Harvey Ely the sum of $15,717,91, for the value of certain real estate belonging to him, situated on the Genesee river at Rochester, which had been appropriated

and taken possession of by the canal commissioners for the improvement of the Erie canal, pursuant to the act of May 6, 1834, " for the improvement of the canals of this state," and for his damages in the premises.   This award was made upon a reappraisement pursuant to a special act of the legislature passed in 1841, for the relief of Mr. Ely and several other persons similarly situated, whose damages had been once appraised and paid.  (*Stat.* 1841, *p.* 203.)   Ely had assigned the award to the relators.   The facts stated in the return raised several questions respecting interest on the amount which had been paid for the damages awarded upon the first appraisement, which are not however of general application.   It is sufficient to mention here that the canal commissioners, upon the facts stated by them, insisted that the relators had been paid the full amount due upon the award.   They denied that a demand had been made of them of the further sum claimed.   The relators demurred to the return.   Joinder.

In the opinion of the court the points involved in the question whether any thing remained due when the mandamus was sued out were examined, and the conclusion was arrived at that a considerable amount to which the relators were entitled, remained unpaid at that time.   The remaining question, in respect to which only it is considered proper to report the case, was whether interest ought to be paid on the amount so adjudged to be due, from the time of the service of the mandamus.

*S. Mathews & M. T. Reynolds*, for the relators.

*J. Van Buren*, (attorney general,) for the canal commissioners.(*a*)

*By the Court*, WHITTLESEY, J.   The question now to be considered is whether the state is bound or liable to pay interest on the amount due when the mandamus was served.   The return sets up that neither the canal commissioners nor the commissioners of the canal fund, have ever in any case paid

(*a*) Argued in October term, 1847.

The People *v.* The Canal Commissioners.

interest on any such awards for damages, and it claims that the state is exempt from the payment of interest. The state, as such, is not liable to pay either principal or interest, as it cannot be sued by a citizen, and of course cannot be compelled to pay any debt. But where questions of public indebtedness come before the judicial tribunals through the agency of public officers over whom the courts have jurisdiction, they do not hesitate to dispose of them upon the same legal and equitable principles which govern judicial decisions as between individuals. They apply the settled rules of law to such cases, and adjudicate upon the payment of both principal and interest in the same manner as in other cases. It is only in such cases that the judicial tribunals can direct the payment of a public debt, and there is no reason why, in directing such payment, the public agents should not be directed to do as ample justice as an individual would be required to do. Hence if the question of the liability of the state to the payment of a claim for damages come properly before a judicial tribunal, whether so brought up by the public officer or the other party, the tribunal in adjudicating upon the question will, if it determines the claim against the state to be just, in addition to directing its payment, also direct the payment of interest thereon, where it would in other cases direct such interest to be paid. In the case of *The Commissioners of the Canal Fund* v. *Kempshall*, (26 *Wend.* 404,) the proceedings to award canal damages were brought before the court by the state officers by *certiorari*, and the court on affirming the proceedings and deciding that the state was liable to pay the award, (as appears by the report and also by the rule entered on that occasion, which we have examined,) directed the payment of interest thereon. The point was distinctly made by the other party ; and it seems to be understood that in all such cases interest is allowed as against the state, where in other cases it would be just to allow it. Thus, in a case in Pennsylvania, (*Respublica* v. *Mitchell*, 2 *Dallas*, 101,) which related to a settlement of accounts with the comptroller general, the court resolved that the state was liable to pay interest as well as individuals. So interest was

held to be payable on treasury notes, after due. (2 *Mason, C. C. Rep.* 1.) Indeed there can be no reason why the state, refusing or unable to pay a just debt, should not pay interest thereon in the same manner as individuals. The rule cannot be enforced as against the state, it is true, as it can be against individuals, because it is not amenable to the judicial tribunals: but it is practically enforced whenever it can be, when its officers properly come or are brought before such tribunals.

In a case like the present, the withholding of the payment of the principal and a refusal to pay interest by the state would almost amount to a violation of the constitution; at least it would be an evasion of its spirit. It is to be borne in mind that the present award is for the damages which a citizen has sustained for the taking of his private property for public use. The late constitution (*Art.* 7, § 7,) declares that private property shall not be taken for public use. without *just* compensation. It has been judicially held that private property may be taken for public use before the compensation is actually paid, so that provision for payment out of an adequate fund be made at the time. (*Rogers* v. *Bradshaw,* 20 *John. Rep.* 735 ; *Bloodgood* v. *The Mohawk and Hudson R. R. Company,* 18. *Wend.* 9.) It is apparent that if the state enter upon private property and at the time ascertain what is the just compensation, but refuse to pay such compensation for years, and do not pay interest on the amount ascertained, it will, at the time of payment, be far from the *just* compensation required by the constitution to be made. Such a case would be an evasion of the spirit and meaning of the constitution.

I cannot doubt but that in a case like this, where the indebtedness is created for private property taken and appropriated for public use, (and that is as far as the principle need be carried for the purposes of this case,) the state is liable to pay interest on the amount of such indebtedness, and that the courts should enforce it whenever through the medium of public officers it acquires jurisdiction to adjudicate upon it.

It is not however necessarily to be inferred from this principle that the state must seek its creditor and pay the debt as

The Peoj le *v.* The Canal Commissioners.

soon as it accrues, at the peril of paying interest; or that the public creditor may refrain from demanding it and entitle himself to interest as long as he chooses to forbear asking for it after it becomes due, and to demand it when he pleases with the accruing interest. Such a result would be oppressive to the state and intolerable for its inconvenience. The state is to be presumed to have the funds in hand to meet the demands upon it; and especially when it appropriates private property for the public use it is presumed to have prepared itself with the necessary money to pay the just compensation. In many cases it is paying interest elsewhere for the funds borrowed for such purpose, and it would be most unjust to compel the payment of interest to the creditor for whom such money was borrowed, because he had not chosen to demand payment of his debt.

As it is to be presumed that the state has funds in hand to meet the demands of its public creditors as they become due, a creditor cannot be entitled to interest until he has demanded payment of his debt. If in a case like the present the creditor owning a debt demands payment of the state or the proper officer, and payment is refused either because the claim is resisted or because the state is not in funds to pay, the creditor should be entitled, on the establishment of his debt, to interest thereon from the time of the demand. In this case there has been no demand of payment of the award so far as appears from the return other than that implied by the service of the mandamus, and the return states that the commissioners have not refused to pay any further sum upon such award, and have been always ready and willing to pay the amount justly due.

As there does not appear, so far as we know, to have been any demand made of payment of the award, the interest upon the award from the date thereof down to the time of the service of the mandamus cannot be allowed to the relators. A peremptory mandamus must issue directing the payment of the amount due at the time of the service of the alternative writ, with interest from that time.

Ordered accordingly.