(91 App. Div. 3.)

In re WOOD'S WILL.

(Supreme Court, Appellate Division Second Department. January 29, 1904.)

1. TRANSFER TAXES—PAYMENT—UNCONSTITUTIONAL LAW—RECOVERY OF INTEREST.

Where a trustee, having charge of an estate for life, before turning it over to the remainderman, paid a transfer tax exacted by an unconstitutional statute (Laws 1899, p. 100, c. 76), the remainderman, in recovering back the tax from the state, was entitled to interest thereon.

Appeal from Order of Surrogate, Kings County.

In the matter of the appraisal of the estate left under the will of Loftis Wood, deceased, for the purpose of determining the amount of the transfer tax. From an order permitting Mary J. Howey, remainderman, to recover interest on the amount illegally collected, the Comptroller of the state appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Leonard B. Smith, for appellant.
Robert H. Wilson, for respondent.

WOODWARD, J. Loftis Wood died on the 16th day of April, 1884, leaving a last will and testament, which was admitted to pro-

bate by the Surrogate's Court of Kings county on May 6, 1884. By the terms of this will certain property was directed to be held in trust for John O'Berry during his life, and upon his death to be divided among certain remaindermen, among whom was Mary J. Howey, the petitioner in this proceeding. John O'Berry died on the 18th day of August, 1901. Thereafter a proceeding was instituted by the executor of the said Loftis Wood for the appraisement of said remainder interests for taxation under chapter 76 of the Laws of 1899, resulting on December 4, 1901, in an order of the Surrogate's Court taxing the transfer to Mary J. Howey at $1,172.88. By the provisions of section 223 of chapter 908, p. 870, of the Laws of 1896, if a tax levied upon the provisions of that act or its amendments is paid within a period of six months from the accruing thereof, it is subject to a discount of 5 per cent., and by the succeeding section it is provided that the executor "having in charge or in trust any legacy or property for distribution subject to such tax shall deduct the tax therefrom"; and it is further provided that "he shall not deliver or be compelled to deliver any specific legacy or property subject to tax under this article to any person until he shall have collected the tax thereon," and he is required to pay the same over to the proper officials. Acting under these provisions of law, the executor of the estate of the said Loftis Wood paid over the amount of this tax to the State Comptroller, less the 5 per cent. discount, and the remainder, we may assume, was delivered to the petitioner in this proceeding.

Chapter 76, p. 100, of the Laws of 1899, amends section 230 of chapter 908, p. 874, of the Laws of 1896, and this act provides:

"All estates upon remainder or reversion, which vested prior to June thirtieth, eighteen hundred and eighty-five, but which will not come into actual possession or enjoyment of the person or corporation beneficially interested therein until after the passage of this act, shall be appraised and taxed as soon as the person or corporation beneficially interested therein shall be entitled to the actual possession or enjoyment thereof."

The petitioner's interest in the estate of the late Loftis Wood came within the language of this clause, and the payment of the transfer tax was made, not by her agent or by her consent, but by the executor of the will of Loftis Wood, acting under the provisions of chapter 908 of the Laws of 1896; bearing no other relation to the petitioner than that of a trustee. Subsequently, in the Matter of Pell's Estate, 171 N. Y. 48, 63 N. E. 789, 57 L. R. A. 540, 89 Am. St. Rep. 791, the Court of Appeals held the amendatory act of 1899 unconstitutional, in that it interfered with vested rights without due process of law. An act entirely unconstitutional is a void act; it is as though no such act had ever been enacted; and, under this state of facts, the Comptroller of the state was in the position of taking the money which belonged absolutely to the petitioner, without any foundation of law. The executor, acting under the provisions of chapter 908 of the Laws of 1896, which act is not suggested to be without full force and effect, is in the attitude of having turned over this fund, in the discharge of a duty enjoined upon him by law, under the mistaken theory that there was a law in existence which required the tax to be paid, and the Comptroller is likewise in the

position of having received this money under the same mistaken theory. This is hardly a mistake of law. There was no question about the reading of the statute, no mistake in the construction of the act, but a mistake as to the fact of the existence of the law. What purported to be a law was not in fact law, and, while it may be said that persons are equally bound to know the constitutional law, there is such a presumption in favor of the constitutionality of statutes that a trustee acting under a constitutional act in reference to an unconstitutional provision of an amendatory act can hardly be said to have made a voluntary payment of this tax, where he made the payment within the period which the law required to save the estate 5 per cent. of the transfer tax, which would be equivalent to a penalty of the like sum for failing to perform within the time specified. The petitioner had no power, under the law, to compel the payment of the legacy to her until the taxes had been paid, if such taxes were legal; the executor owed her no duty of payment until all legal obligations were discharged; and in receiving the amount which the executor paid over to her, after the payment of the tax, the relator could not be deemed to have made a voluntary payment of the tax.

There is no question raised in this proceeding as to the right of the petitioner to receive back the amount of the tax paid. This was assumed to have been fully determined in the Matter of Scrimgeour's Estate, 175 N. Y. 507, 67 N. E. 1089, where the amount paid, with interest, was permitted to be recovered. But it is insisted on the part of the Comptroller that the restoration should be made without interest, or at least that interest should be allowed only from the time a demand was made. It is probably true, if the payment was made voluntarily by the petitioner, with a full knowledge of the facts, she would have no right to recover, unless by express statutory permission; and, if the tax had been laid under a valid statute in an erroneous manner, a demand for a return of the money would be necessary, to impose any obligation upon the Comptroller or other public official to pay interest; but in this case the money was paid to the Comptroller, not by the petitioner or her agent, but by the representative of the estate of the late Loftis Wood, who was discharging a duty imposed upon him by law to pay whatever taxes were legally imposed upon the legacy before paying it over. She had no control, unless through an equitable action to preserve the trust estate, over the conduct of the executor; and in this proceeding against the Comptroller she stands in the attitude of one who has been deprived of her property by the state, through its executive and legislative departments, without due process of law. The legislative department prescribed the duties of the executor. It directed—illegally it is true, but directed nevertheless—the levying of a transfer tax upon property which had already vested in the petitioner, and made it the duty of the executor to take this tax out of the legacy and turn it over to the Comptroller. The latter received this money without having any right in law to its possession or ownership, and we can see no reason why the petitioner in this case should be deprived of the lawful interest upon her money because the state by its wrongful acts has deprived her of its use. The intent of the Comptroller is of no importance;

he and the executor acted upon a mistake as to the existence of a law; and the petitioner, being in no wise responsible for their mistakes, either of law or of fact, was wrongfully deprived of her money, which the laws of this state recognize as being worth 6 per cent. per annum for its use; and the right to restoration carries with it, under these circumstances, by necessary implication, the right to the use of the money which should have been delivered to her instead of the Comptroller. See People v. Canal Commissioners, 5 Denio, 401. In Ætna Ins. Co. v. Mayor, 7 App. Div. 145, 40 N. Y. Supp. 120, it was held that a bank, in paying an illegal tax, was not the agent of the person whose funds it held, so as to impute voluntary payment of such tax to him, and this case was affirmed by the Court of Appeals. 153 N. Y. 331, 47 N. E. 593. The question of interest does not appear to have been discussed in Matter of Scrimgeour's Estate, 175 N. Y. 507, 67 N. E. 1089, but it was necessarily involved in the order; and we are clearly of opinion that under the law the petitioner has a right to be placed in the same position that she would have occupied, as nearly as practicable, had the money been paid to her at the same time it was illegally handed over to the Comptroller, and this involves the value of the use of the fund which belonged to her all of the time that it remained in the possession of the Comptroller.

The order appealed from should be affirmed, with $10 costs and disbursements. All concur.