In the Matter of the Application of JULIA T. DICK and Another, as Executrices, etc., of WILLIAM DICK, Deceased, Respondents, for a Peremptory Order of Mandamus against VINCENT B. MURPHY, as Comptroller of the State of New York, and Others, Appellants.

Third Department, January 5, 1927.

**Taxation — transfer tax — testator died in 1912 — tax was adjusted at highest possible rate on basis of contingent future estate under Tax Law, § 230 — tax was paid and Comptroller paid entire amount to State Treasurer — tax not having been adjusted at both highest and lowest possible rates under Tax Law, § 241, no interest is payable on difference — Laws of 1925, chap. 144, struck out of section 230 provision that " Such return of overpayment shall be made in the manner provided " by section 225 — § 241, as amd. by Laws of 1921, chap. 476, permits withdrawal from State Treasury of difference between lowest and highest rates and deposit by Comptroller to credit of estate in interest account — this procedure must be followed in order to procure refund — interest payable only from time difference is deposited to account of estate.**

Where property was devised in 1912 to a son for life, with remainder over to his lawful heirs at law and next of kin, and the transfer tax was adjusted at the highest possible rate on the basis of a contingent future estate under section 230 of the Tax Law, and such tax paid to the Comptroller who in turn paid the entire amount to the State Treasurer, the executrices of the will upon the death of the life tenant were not entitled to interest on the difference between the highest rate fixed and the rate determinable upon the death of the life tenant.

The statute provided alternative remedies: The first by the adjustment of tax at the highest possible rate and the payment to the Comptroller under section 230 of the Tax Law, who, in turn, remits the amount to the State Treasurer; and the second by having the tax adjusted at the highest possible rate and at the lowest possible rate, in which case the Comptroller will, under section 241 of the Tax Law, deposit the difference in an interest-bearing account to the credit of the estate. If the estate desired interest under the then existing statute, it should have proceeded by the latter method. In this case, the former method was used and, therefore, the interest is not chargeable against the State.

Since chapter 144 of the Laws of 1925 struck out of section 230 the provision that " Such return of overpayment shall be made in the manner provided " by section 225, the only means by which a refund can be had is by proceeding under section 241, as amended by the Laws of 1921, chapter 476, to have the difference in tax between the lowest and highest rates determined and withdrawn by the Comptroller from the State Treasury and deposited to the credit of the estate in an interest account, and on that deposit the State will be liable for interest from the date the deposit is made.

APPEAL by Vincent B. Murphy and others from a peremptory mandamus order, made at the Albany Special Term and entered in the office of the clerk of the county of Albany on the 19th day of August, 1926, directing the appellants to refund an excess transfer tax with interest to the petitioners.

Reported below, 128 Misc. 4.

*Albert Ottinger,* Attorney-General [*Henry S. Manley* and *Seth T. Cole* of counsel], for the appellants.

*Henry F. Cochrane,* for the respondents.

HINMAN, J. The question here arises over a transfer tax paid September 13, 1912, by the representatives of the estate of William Dick, who died in Brooklyn April fifth of that year. By the provisions of his will a son, J. Henry Dick, was given the life use and income of one-half the estate, the remainder being devised and bequeathed to the lawful heirs at law and next of kin of said son. The tax adjusted by the surrogate on September 6, 1912, aggregated $179,677.83. Of this the tax on the interest of the " lawful heirs and next of kin of J. Henry Dick," whose names or degree of relationship could not then be known, was $70,486.99 — it being assessed as a contingent future estate at the highest rate which on the happening of any contingency would be possible, under section 230 of the Tax Law, as amended by chapter 800 of the Laws of 1911. The tax in its entirety, without separation of the amount of any possible refund upon the vesting of the contingent future estate in the heirs of J. Henry Dick, was paid, less the five per cent discount, to the State Comptroller on September 13, 1912.

J. Henry Dick died September 30, 1925, leaving surviving four children as his sole heirs at law and next of kin. On April 14, 1926, one of the executrices made application to the Surrogate's Court of Kings county for an order modifying the former decree of September 6, 1912, and thereafter a new decree was made fixing the tax on the remainders at a total of $18,759.16. The amount of refund to which the executrices were entitled from the State under that decree was $49,141.44. This was demanded. The State Tax Commission offered to pay it but refused to pay any interest thereon as demanded by the executrices of the estate. The demand was for such interest as would have accrued if the State Comptroller had made a deposit in the proper amount to the credit of the estate in some savings bank or trust company in 1912, in accordance with section 241 of the Tax Law, as amended by chapter 800 of the Laws of 1911. The State Comptroller had not made any such deposit to the credit of this estate when the tax was paid to him on September 13, 1912, but paid the entire

amount of the tax over to the State Treasurer. At no time thereafter until June 11, 1926, did the estate of William Dick ask for any interest, semi-annual or otherwise, upon any such deposit as was contemplated by said section 241. When the State Tax Commission refused to pay any such interest on the refund, the executrices applied to the Supreme Court for a peremptory mandamus order. Such an order, requiring the payment of $49,141.44, with interest at the rate of four per centum per annum from the 13th day of September, 1912, to the date of the payment, was granted by the Special Term. The appeal is from that order.

The narrow question presented here is: Was the Tax Commission legally required to pay interest?

When the relator in mandamus proceeds to argument upon his petition and the opposing affidavits of the defendant, and demands that a peremptory writ issue, the proceeding is in the nature of a demurrer to the facts set up by the defendant, and the right to the writ must be determined upon the assumption that the averments of the defendant's affidavits are true. (*People ex rel. City of Buffalo* v. *N. Y. C. & H. R. R. R. Co.,* 156 N. Y. 570, 575; *Matter of Davis* v. *Sexton,* 211 App. Div. 233, 235.) The answering affidavit of William E. Stephens, Deputy Tax Commissioner in charge of the transfer tax bureau of the State Tax Department, must be assumed to set forth the facts therein alleged. Such answering affidavit alleges the following facts: " Since the Tax Law has been amended by chapter 800 of 1911, offering to taxpayers a new and different procedure for paying and adjusting taxes upon future interests, the former practice under section 230 has been pursued in many cases to which the newer procedure under section 241 is applicable also. The two courses have continued to co-exist, and one or the other has been availed of in each case of future interests as the respective taxpayer has elected.

" Where the estate and its representatives desires to avail itself of the provisions of section 241 it is essential that its representatives seek and procure from the Surrogate making the taxing order an adjudication as to the amount of tax at the lowest possible rate, so that the Comptroller or State Tax Commission may have clear authority for withholding the difference between high and low rates from payment over to the State Treasurer, and for depositing it with a bank to the account of the estate.

"*At all times since 1911* it has been common for Surrogates and representatives of estates to ignore the provisions of section 241 and to draw and accept an order fixing tax upon future interests at the highest possible rate only, and in the various counties hundreds of orders have been drawn in such cases in no one of which is

tax fixed at the lowest rate as provided in section 241. *In all such cases,* where an order is drawn and accepted fixing tax at the highest rate only, the entire amount of tax is paid over by the Comptroller and State Tax Commission to the State Treasurer and passes into the general funds of the estate. The receipt in all such cases issued by the Comptroller and countersigned by the State Treasurer bears upon its face a recital of receipt of the entire amount of the payment and the receipt number 8191 set out below shows its form and contents. In all such cases, upon happening of the contingencies and entry of an amended order involving a refund, the refund is made by virtue of section 230 and without interest.

" Where the order is drawn in contemplation of section 241 and fixes both high and low rates the total amount is allocated accordingly in the receipt and otherwise. In such cases the receipt bears upon its face a recital of receipt of the lowest amount only, and upon its reverse a receipt for the difference to be deposited, typed thereon, in the form given immediately below. *This practice has been followed ever since the 1911 amendment became effective, but the earlier receipts were signed by the Comptroller instead of the State Tax Commission.:*

" ' Receipt is also acknowledged of the sum of . . . . . . . . . . . dollars ($          ) in cash, which represents the difference in tax upon the remainder estates created by the decedent's will, assessed at the highest rate possible upon the happening of certain contingencies, amounting to $          , and at the sum of $          if the remainders aforesaid had vested in possession and enjoyment on the date of the appraisal, pursuant to the order of the Surrogate of          County, entered          19   ; which said sum of $          , representing the difference in tax as aforesaid, had been deposited in the First National Bank, of Albany, N. Y., Book No. C          , in the name of the Comptroller of the State of New York, special account, Estate of          , pursuant to Sec. 241 of the Tax Law.

" ' STATE TAX COMMISSION,

" ' By . . . . . . . . . . . . . . . . . . . .

" ' *Deputy Tax Commissioner.*'

" In the case of the estate of William Dick I am informed and believe that the estate was represented upon granting of the original taxing order of September 6, 1912, and in the proceedings incidental thereto by its attorneys, Fisher & Voltz, of 84 Broadway, New York City, and I am informed and believe that they drafted the said order (a copy of which is hereto annexed and made a part hereof) but did not seek any computation of tax at the lowest possible rate as provided in section 241 as amended by chapter 800

of 1911, nor did they or the estate allocate or seek any allocation of the payment of $170,693.94 on September 13, 1912, between the amount of tax computed at the lowest rate and the difference available for deposit under provisions of section 241 as so amended. The Comptroller issued to them his receipt in the following form, without any endorsement upon its reverse:

" ' Duplicate    " ' STATE OF NEW YORK          No. 8191
                              COMPTROLLER'S OFFICE
" ' $170693.94                            ALBANY, *Sept.* 13, 1912
" ' Received from J. Henry Dick — Executor of the estate of William Dick — deceased One Hundred seventy thousand six hundred ninety three and 94/100 Dollars for Amount of TRANSFER TAX assessed and fixed thereon by the Surrogate of the County of Kings by Order entered.

" ' Sealed and                              Sept. 6, 1912
" ' Countersigned                     less $8983.89 disct.
                    " ' (signed)
                              " ' . . . . . . . . . . . . . . .
                    " ' *Comptroller of the State of New York.*'
                    " ' (signed)
                              " ' . . . . . . . . . . . . . . .
                    " ' *Treasurer of the State of New York.*'

" This receipt was accepted by the estate and by its representatives without protest or objection, and they have never, until the present proceeding, sought an allocation of the amounts taxable at the lowest rate and the remainder subject to deposit under provisions of section 241, nor have they sought such deposit.

" The entire sum of $170,693.94 so paid by the estate of William Dick was thereafter and in the year 1912 paid over by the Comptroller to the State Treasurer and in that year passed into the general funds of the State, and it is impossible to say what, if any, interest and profit has been earned and accumulated upon it. The estate of William Dick and its representatives have had no interest from it, semi-annually or otherwise, and until Mr. Cochrane's letter of June 11, 1926, have not asked or demanded interest or profits upon any part of it."

I have carefully reviewed the statutes and find there is much of sound reasoning by the Attorney-General in support of the practice adopted by the Comptroller at all times since the 1911 amendment became effective, when a new method of saving interest was made available to an estate by amendment of section 241 of the Tax Law. (Laws of 1911, chap. 800.) It is a matter of

statutory construction; and the history of the statutes seems to bear out, with much plausibility, the Comptroller's 1911 interpretation that two alternative statutory remedies were made available at that time. The initial remedy under section 230, supplemented by the method of returning the overpayment pursuant to section 225, was expressly retained in section 230 until 1925. I do not see how we can avoid the conclusion that the remedy afforded by section 241 was an alternative one. Its method of refund was wholly inconsistent with the method of refund under section 225. Section 241 required the debatable portion of the tax to be segregated in a deposit to the credit of the estate until the vesting of the contingent remainder. Section 225 provided for the return of the overpayment out of the general deposit to the credit of the Comptroller on account of transfer tax, from which he turned over monthly balances to the State Treasurer, after deducting refunds and expenses legally chargeable against it. (See § 241.) There seems to have been nothing in section 225 relating to the " manner " of making a return of overpayment which could be applicable except the provision therein as to the effect of a modifying order of the surrogate and as to the fund from which the repayment could be made. If the repayment was to be made from this general deposit to the credit of the Comptroller on account of transfer taxes, what was the use of the provision in section 241 requiring each estate to have its own deposit in bank to the credit of the estate and requiring that the excess so held should be repaid to the estate if it developed that there had been an overpayment? It is obvious that two remedies were available. A contingency could arise in which the Comptroller would be expected to follow the method prescribed by section 241 and set up a special account for an estate. Another contingency could arise where he would be justified in not doing so. In that event he would pay the whole tax over to the State Treasurer and make any later refund out of his general transfer tax deposit, as required by section 225. Section 230 expressly provided that " Such return of overpayment shall be made in the manner provided " by section 225. By necessary inference the Comptroller assumed that, if he was expected to make a refund out of general funds to the credit of such taxes rather than out of a special fund to the credit of the particular estate, he was at liberty in a proper case to turn the whole tax, when originally paid, over to that same general fund and from there into the State treasury. The question was naturally raised in his mind as to when he should adopt the one course and when the other. He gave due weight to each of the statutory methods. He permitted each estate to determine

for itself whether any portion of the tax should be specially deposited in an account to the credit of the estate. He relied upon the form of the taxing order. If the order was drawn in contemplation of section 241 by fixing both high and low rates upon future interests, an allocation was accordingly made of the sum representing the difference between such rates, which sum was then deposited to the credit of the estate and the Comptroller's receipt indicated such disposition. If the taxing order fixed the tax at the highest rate only and the estate did not seek any allocation under section 241, the Comptroller proceeded under sections 230 and 225 to pay the entire tax to the State Treasurer. That was the established practice when the tax in question was paid. That was his invariable rule from the very beginning in 1911. The answering affidavit so states and the averments of such affidavit must be taken to be true. That was his practical construction of two inconsistent statutory remedies and his long adherence to it. for fifteen years without a question having been raised until now, is a circumstance of great importance in determining what construction should now be put upon those statutes. (*Grimmer* v. *Tenement House Department*, 205 N. Y. 549, 550; *Bullock* v. *Cooley*, 225 id. 566, 571.) It is rather late for us to say that he was clearly wrong in the face of such ·inconsistent statutory methods and to allow this estate to recover interest upon some theory of equity and justice resting upon an absolute duty of the Comptroller to have made the deposit required by section 241 although the estate has allowed fourteen years to go by without demanding interest. Surely the estate cannot be assumed to have been deceived by the action of the Comptroller. Section 241 provided for the payment of current interest during that period to the executors. Why did they not ask for it? Plainly because they neglected to inform themselves as to their right to have it if they requested it. They neglected their rights and they are to blame. Now they ask the State to pay interest which the State has not accumulated because of their neglect to inform themselves as to the law and the practice of the Comptroller's office.

But that is not all. Mandamus is unavailable in the absence of a clear legal right. Where are we going to get the money for this refund and interest? We cannot direct the Comptroller to repay principal or interest unless the statutes authorize the payment and supply the fund. The Constitution provides that no moneys shall be paid out of the treasury of the State except pursuant to an appropriation by law. (N. Y. Const. art. 3, § 21.) Chapter 144 of the Laws of 1925, in effect March 16, 1925, struck out of section 230 the provision that " Such return of overpayment shall be made in

the manner provided " by section 225. This future estate vested on September 30, 1925, by the death of the life tenant. At the time of vesting there was no such provision in section 230 as would authorize the Comptroller to pay the refund out of his general deposit on account of transfer taxes. No deposit had been made to the credit of the estate. Where is the Comptroller to get the money? That is an embarrassing question and must be answered. It seems to me that we must adopt one of two alternatives.

*First.* We must examine section 225 to see whether that general section for the " Refund of tax erroneously paid " is broad enough to apply without any reference to it in section 230. The first sentence does not apply, because it deals exclusively with debts. The second sentence is of broader application. It applies to a refund of an excess tax where, after the payment of a tax pursuant to an order fixing such tax, such order is later modified or reversed. In our case a preliminary order was later modified by the surrogate upon the vesting of the remainder. The difficulty is that section 225 limits the effect of that provision to a modifying or reversing order granted " within two years from and after the date of entry of the order fixing the tax." That has been the law since 1911. Fifteen years have elapsed in our case before granting a modifying order. Therefore, our case does not come within the general provisions of section 225. If it did come within such general provisions, interest, under the express terms of that section, would be denied. If section 230 still required that return of the overpayment should be made pursuant to section 225, we might say that the intent of the Legislature was to do away with the limitation of two years for the modifying order of the surrogate set forth in section 225 as a prerequisite to a refund under the latter section. That would require the interpretation that no interest be paid. The fact is, however, that the law has been changed by striking out that provision in section 230. My conclusion is that we must seek another remedy.

*Second.* Section 241 was amended by the Laws of 1921, chapter 476, section 21, by adding the following provision: " If on account of the time or manner of payment of a tax under this article it be impossible to identify or separate the portion thereof paid on account of a contingent remainder pursuant to this section and the whole of such payment shall have been deposited in the State treasury, the portion of the tax on account of such contingent remainder to be held or deposited on account of the estate pursuant to this section shall be deemed a refund under this article, and shall be drawn, on the certificate of the Tax Commission and approval of the Comptroller, from moneys deposited with the State Comptrol-

ler and available for refunds under this article, and when so drawn shall be deposited to the credit of the State Comptroller on account of the estate as provided by this section." Adopting a liberal construction of this amendment, we hold that it was the manner of payment of the tax in question under existing rules and practice of the Comptroller in 1912 which made it impossible to separate the debatable portion of this tax; and the whole amount was deposited in the State treasury. Since 1921 this estate had an opportunity to have this deposit made to its credit but no effort has been made to do so. The above-quoted provision makes it clear that only " the portion of the tax on account of such contingent remainder to be held or deposited on account of the estate " shall be drawn and so deposited. Nothing is said that could possibly warrant the Comptroller in adding accrued interest in making such a withdrawal and deposit. In this the Legislature has again shown an intention to withhold interest on refunds except the interest which such a deposit would provide. The question as to interest has been clear from the beginning. Payment of transfer tax in advance of the vesting of a contingent remainder was first provided in the Laws of 1899, chapter 76, which amended section 230 of the Tax Law of 1896 from which the present section 230 was derived. By that act refunds of overpayment upon the happening of the contingency were required to be made with six per cent interest. Section 225 of the Tax Law of 1896, from which the present section 225 was derived, was referred to as providing the manner of payment. By the Laws of 1902, chapter 496, amending said section 230 of the Tax Law of 1896, the rate of interest on refunds was cut to three per cent. By the Laws of 1907, chapter 323, section 225 of the Tax Law of 1896 was amended so as to provide that refunds made under the special provisions of that section should not carry any interest, but section 230, which specifically provided for refunds of excess tax on contingent remainders, continued to provide a refund with three per cent interest. Then in 1911, by chapter 800 of the laws of that year, the Legislature amended sections 230 and 241. Section 230 was amended by striking out the three per cent interest provision on refunds. It was also amended so as to provide that the representative of an estate, on the vesting of a contingent remainder, should apply to the surrogate on notice for a modified order making final assessment of the tax. The provision requiring the refund to be made in the manner provided in section 225 was continued, that is, by getting a modified order from the surrogate notwithstanding the two years' limitation expressed in section 225 and by getting a refund out of the fund in the Comptroller's custody

to the credit of the transfer taxes. That, as I have heretofore shown, would not carry interest because section 225 at that time expressly so provided. The practical distinguishing feature of our decision in *People ex rel. Metropolitan Trust Co.* v. *Travis* (191 App. Div. 129) was that we refused to interpret the amendments of 1911 as having retroactive effect so as to cover a refund of a portion of a tax paid in 1903 which was at a time when the statutes held out a promise of repayment with interest at three per cent. It was one of those cases where equity and justice required the State to refund the principal with interest in the absence of a clear requirement of the statute to the contrary. When the peculiar facts in the *Metropolitan* case are considered, our decision therein is not opposed to my argument. My argument is, that for all taxes paid after the 1911 amendments, the statutes made it clear that the State refused to repay with interest. It did, however, prov'de a new method whereby an estate could have its own moneys set apart in a special bank account to its credit and could enjoy the interest as collected for the benefit of the life tenant. So the Legislature, when it amended section 230 in 1911 by chapter 800, so as to provide for a continuance of refunds under the old method but without interest (the three per cent provision having been stricken out of section 230 by chapter 800), it also amended section 241 so as to provide the new method of allowing interest as it accrued on a special deposit to the credit of the estate. This section fully elaborated the method of caring for the tax moneys, interest and refund and expressly made it the duty of the representatives of the estate to notify the Comptroller of the actual vesting of all such contingent remainders. The method elaborated in that section could be deemed complete in itself without reference to section 230, which in turn accomplished a complete alternative method in conjunction with section 225. The statutes remained in that substantial form until the passage of the Laws of 1921, chapter 476, section 21, when the Legislature allowed a transition from the method prescribed in section 230 to the method prescribed in section 241, to which I have already referred. It evidently contemplated the practice of the Comptroller which was begun in 1911 of not erecting a special deposit for an estate unless the manner of payment of the tax had been such as to fix for him the exact amount of such a deposit. If interest on refunds had previously been contemplated by the Legislature except under section 241, there was no real need of the amendment of 1921. Then, finally, the Legislature by the Laws of 1925, chapter 144, struck out of section 230 the provision that a refund should be made pursuant to section 225 and inserted in section 230 a provision for a penalty

of interest against the estate if the representatives of the estate did not act within a prescribed time to modify the taxing order after the contingent remainder had vested. The Legislature clearly intended, by the Laws of 1925, chapter 144, to supplement the act of 1921 by uniting into one method the two distinct methods provided by the Laws of 1911, chapter 800. No injustice was done to any estate because the Laws of 1921, chapter 476, had afforded an opportunity for transition to the method of special deposit prescribed in section 241. That opportunity is still available to these petitioners and their remedy is to apply to the Tax Commission and Comptroller to make such a deposit for them out of the general transfer tax deposit to the credit of the Comptroller prior to getting a refund. If immediately withdrawn, it will of course carry no interest. I see no other way of getting a refund of either principal or interest under the present statutes.

We will not assume to direct the State Tax Commission and the Comptroller to issue a certificate in this case pursuant to section 241 of the Tax Law, as amended by the Laws of 1921, chapter 476, section 21, since the petitioners have not applied for any such certificate and it is to be assumed that the State Tax Commission proposed to adopt that method as its only available recourse under existing statutes when it offered to make the refund without interest.

The order should be reversed upon the law and the facts and the proceeding dismissed, with costs.

COCHRANE, P. J., VAN KIRK and McCANN, JJ., concur.

DAVIS, J. I concur in the conclusion of HINMAN, J., on the narrow question that the Comptroller is not liable for interest on the facts shown in this particular case. Beyond that I do not go. I think it likely that there may be liability for interest where the Comptroller has accepted a tax with knowledge that a definite portion thereof is a tax on contingent interests and the matter of determining the high and low tax is mere matter of computation. If under such circumstances he does not invest the difference between the high and low tax as provided in section 241 of the Tax Law, and the aggrieved party moves with reasonable promptness, liability may follow under familiar doctrines based on equity and justice. (*People ex rel. Bank of Monroe* v. *Canal Comrs.*, 5 Den. 401; *Matter of O'Berry*, 179 N. Y. 285; *Procter & Gamble Distributing Co.* v. *Sherman*, 2 F. [2d] 165; *People ex rel. Metropolitan Trust Co.* v. *Travis*, 191 App. Div. 129.)

Order reversed on the law and proceeding dismissed, with costs.